No. 16,443.

PATTERSON *v.* BECKER.
(222 P. [2d] 780)

Decided July 24, 1950. Rehearing denied October 9, 1950.

Mr. MORRIS RIFKIN, for plaintiff in error.

Messrs. WOLVINGTON & WORMWOOD, for defendant in error.

*In Department.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared in the trial court, where plaintiff in error was plaintiff, and defendant in error was defendant.

The action grows out of a collision between an automobile and a pedestrian at the intersection of East Colfax avenue and Adams street in Denver, Colorado. The case was tried to a jury which returned a verdict in favor of defendant, and an appropriate judgment was entered.

At the close of all the evidence counsel for plaintiff moved that the jury be instructed to return a verdict in favor of the plaintiff and against defendant, assessing her damage in such amount as the jury might determine to compensate her for the injuries which she sustained. The grounds for this motion were that, under the evidence admitted upon the trial, defendant was guilty of negligence as a matter of law, and that there was no

evidence creating an issue of fact for determination by the jury upon the defenses of contributory negligence and unavoidable accident, upon which defendant relied.

Defendant, just prior to the accident, had been driving west on East Colfax avenue and upon coming to the intersection at Adams street brought his automobile to a stop because the traffic light was red for traffic moving westward on East Colfax avenue. It is undisputed that defendant's car was to the right of the safety zone, leaving the pedestrian crosswalk clear for persons desiring to cross East Colfax avenue in front of his car.

Plaintiff testified that she had been waiting on the north side of East Colfax avenue intending to board a westbound streetcar at the said intersection; that the streetcar was approaching; and that she stepped into the crosswalk while the traffic light was green, in her favor, and started for the safety zone when she was hit by defendant's automobile, and that the left end of the bumper of his car struck her down. She further testified that when she was about halfway to the safety zone the traffic light flashed red, and before she reached the safety zone the collision occurred, as a result of which she sustained a broken leg and other injuries.

Defendant testified that he stopped at the intersection to wait for the red light to change to green; that his car was stopped between the buttons outlining the safety zone and the curb on the north side of East Colfax avenue. He stated that, while he was thus stopped, no pedestrian crossed in front of him, and when the light changed from red to green he started his car forward, and "as I started up, just as I started up, in a flash something stepped in front of me." "Q. Coming from your right? A. From my right. Q. In what gear were you? A. Low gear. Q. At the time you started up, state whether or not there was anybody in front of you at that time. A. There was no one in front of me at that time. Q. When this flash came from your right after you started up, what happened? A. I stopped as fast as

possible. Q. Did your car come in contact with that object? A. Yes. Q. What part of your car? A. The right front part of the bumper. Q. That was Mrs. Patterson, was it? A. Yes sir."

The defendant was questioned as an adverse party under Rule 43 C (b) Rules of Civil Procedure, during the course of which he testified as follows: "Q. Do you remember seeing Mrs. Patterson at all prior to your starting the car? A. No. Q. You didn't see her at all? A. No. Q. What part of your car hit her? A. Front right bumper. * * * Q. What part of the intersection was Mrs. Patterson in when you struck her? A. She was over to the right front of the car. If you are referring to a cross-walk, there is no cross-walk marked off there. If there should be a cross-walk, she was in almost that position, where the cross-walk would be. Q. In other words, she was on highway in a place where the cross-walk would have been, from the Blue Bird Theatre to the safety zone? A. That's right. Q. There was a safety zone there? A. Yes, to the left of me. Q. You had stopped for this red light, and then you proceeded after you noticed the light green? A. Yes. Q. You were right adjoining the safety zone, were you not? A. Yes. Q. Was there room enough between your car and the curbing for another car? A. Yes."

The deposition of plaintiff was taken prior to the trial and was admitted in evidence without objection. The following appears in this deposition: "Q. And you know that there is heavy traffic there? A. Oh, yes. Q. And, as I understand it, from the time you started out into the street until you were struck, you were watching the light? A. Yes, sir. Q. And you weren't watching for cars there to your left? A. No, sir. I was watching the light. I always watch the lights, because it always makes me nervous to go across a street with heavy traffic. Q. Had you actually seen the defendant's car stop there before you started to cross? A. I seen the car there, but I paid it no mind. You know, there was nothing to bring

my attention to the car. It was just a car parked there, standing there, and that's all I know."

A diagram of the intersection was introduced in evidence and the plaintiff placed markings thereon indicating the point at which she moved into the street toward the safety zone. From this diagram it might appear that she started into the street from a point some few feet to the rear of the front of defendant's car, thus remaining out of the range of vision of defendant. The jury was instructed upon the defense of contributory negligence, to which counsel for plaintiff objected solely on the ground that there was no evidence to support a finding of contributory negligence. All specifications of points upon which plaintiff relies relate to the refusal of the court to direct a verdict in her favor upon the question of defendant's liability, and the submission of the question of contributory negligence to the jury over her objection.

The questions presented for determination are, whether or not, as a matter of law, under the evidence, defendant was guilty of negligence; and whether plaintiff, as a matter of law, was free from contributory negligence.

We stated in *Rocky Mountain Fuel Co. v. Tucker,* 72 Colo. 308, 211 Pac. 383, quoting from *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390: "Questions of negligence, as well as contributory negligence, are generally within the province of the jury, which should not be invaded by the courts except in the clearest of cases."

In the case of *Ringsby Truck Lines, Inc. v. Hilliar, et al.,* 121 Colo. 240, 215 P. (2d) 719, we stated: " * * * whatever our conclusion of fact might be from reading the printed record, we must not reverse that finding [of the trial court] if it has any substantial support."

In *Phillips et al. v. Denver City Tramway Co.,* 53 Colo. 458, 128 Pac. 460, we said: "The question whether such contributory negligence has been proven is usually one for the jury. Under all the authorities, it is only in the clearest of cases, when the facts are undisputed and

it is plain that all intelligent men can draw but one inference from them, that the question is ever one of law for the court."

In *Swanson et al. v. Martin,* 120 Colo. 361, 209 P. (2d) 917, we quoted with approval from Shearman and Redfield on Negligence (Rev. ed.), vol. 1, p. 111, §42, as follows: "The question of negligence must be submitted to the jury * * * where there is room for difference of opinion between reasonable men as to the inferences which might fairly be drawn from conceded facts."

We are satisfied that there was sufficient evidence, upon the question of contributory negligence, to warrant the submission of that issue to the jury for determination under proper instructions.

The trial court did not err in refusing to direct a verdict in favor of plaintiff. The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE JACKSON concur.