MANSFIELD ENGINEERING COMPANY v. WINKLE.

[No. 11,238. Filed December 23, 1921.]

MASTER AND SERVANT.—*Workmen's Compensation Act.—Injury Arising Out of and in Course of Employment.—Evidence.— Sufficiency.*—In a proceeding under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918) to obtain compensation for the death of a servant who was struck on the head with an air hammer, evidence *held* sufficient to sustain a finding that death was caused by an accidental injury which arose out and in the course of the employment, though the direct and immediate cause of death was a rupture of the heart.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Nellie Winkle against the Mansfield Engineering Company. From an award of compensation the defendant appeals. *Affirmed.*

*Charles E. Henderson* and *Charles Unger,* for appellant.

*Emsley W. Johnson* and *Joseph W. Hutchinson,* for appellee.

McMAHAN, J.—The Industrial Board found that on April 23, 1921, one George Winkle, while in the employ of appellant received a personal injury by accident arising out of and in the course of his employment, and resulting in his death. Compensation was awarded to the widow as sole dependent.

Appellant's only contention is that there is no evidence to connect the injury with the immediate cause of death.

There is evidence tending to show that George Winkle was a structural iron worker and at the time of his death was a vigorous, well-nourished man, forty-three years old and weighed 160 to 165 pounds, never complained of being sick or of any trouble with his heart.

He was in good spirits and feeling well when he went to work on the day he was injured. About 9:30 a.m. while engaged in his regular work he was struck on the forehead with an air-hammer which he was using. Immediately after receiving the blow he threw his hands over his face and walked around for a few minutes and returned to his work. The blow was of sufficient force to produce a discolored spot about an inch in diameter and three or four other smaller places around the nose and beneath the eyebrows where the skin was broken. He left his work at noon and complained that he was getting "awfully sick" and that his head was "hurting fit to kill." A little later he expressed a desire to go to a drug store where he could get something for his head. He took a car and later went into a drug store, where he complained of a severe pain in the stomach, took a dose of magnesia and peppermint, fell to the floor and within a few minutes after taking the medicine vomited. He got home about 1:30 p.m. and died about a half hour later. When he reached the gate at his home he staggered and held to the gatepost. He then sat down on the doorsteps until his wife helped him into the house when he sank to the floor and complained of pain in the chest and head. He became unconscious and died within a few minutes after the physician arrived. The body was embalmed by an undertaker and two days later an autopsy was held. It showed no apparent injury to the skull or brain. The heart was removed, and it was found that the tissue on the posterior side of the right auricle had degenerated to such an extent it was but slightly thicker than paper, and was ruptured. The direct and immediate cause of death was the rupture of the heart. Four or five physicians testified. Two of them in answer to the hypothetical questions, testified that in their opinion the rupture of the heart which caused death was probably a result

of the shock produced by the blow on the head. Others testified that the blow did not cause the rupture, and that the blow had nothing to do with the rupture.

There is no necessity for us to enter into a discussion of the law applicable to cases of this character. The right of the board to draw reasonable inferences from the evidence and the weight to be given to the finding of the board when there is any evidence to support the finding is settled by the decisions of this court. There is ample evidence to support the finding that the death of George Winkle was caused by an accidental injury which arose out of and in the course of his employment.

The award is therefore affirmed.