No. 18,261.

INDUSTRIAL COMMISSION OF COLORADO, ET AL. *v.* MINNIE MILDRED HAVENS, ET AL.

(314 P. [2d] 698)

Decided August 26, 1957. Rehearing denied September 16, 1957.

Messrs. WORMWOOD, O'DELL & WOLVINGTON, Mr. PAUL D. RENNER, for plaintiffs in error J. B. Montgomery, Inc., and Transport Indemnity Company.

Messrs. CREAMER & CREAMER, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is a workmen's compensation case involving undisputed evidence as to the facts. We will refer to decedent Clifford Grant Havens, the deceased employée, as Havens; to those claiming under him, as claimants, or by name; and to the plaintiffs in error as employer.

The record shows that Havens, age 47, was employed on February 2, 1956, six days prior to his death, to drive a truck for employer on a Denver-Chicago run. He drove from Nebraska to Chicago, then to Denver on this occasion. Lloyd Ballinger was his relief or co-driver on the journey. In Chicago they picked up a load of about ten tons of merchandise for Swift and Company in Denver. They stopped in North Platte, Nebraska, on February 1 on the return trip to enable Havens to see his wife and arrived in Denver about 10 p.m. the same day. Havens slept in the truck and Ballinger went home for the night. At 7 a.m. the next day Havens drove to the Swift plant where he met Ballinger. At 8 a.m. both of them, with a Swift employee's help, commenced unloading the truck, placing the goods on handcars which were moved down a ramp from the truck to the loading platform, thence elsewhere in the plant. The goods ranged from packages 30 to 40 pounds in weight to lard barrels weighing up to 200 pounds each. The handcar when loaded held between 2000 and 2500 pounds of merchandise. Witness Ballinger, who was accustomed to such work, testified that he was tired from it and that so was Havens who was not used to this unusual exertion, his

previous work having been solely as a gasoline transport driver not involving heavy manual labor. This work continued until 12 noon. Between 11 a.m. and 12 noon, while the Swift employee was gone, Havens was struck by a handcar which he and Ballinger had loaded and which broke loose on the ramp. It knocked him backwards on his knee after striking him in the side or leg, but he appeared to recover immediately and continued his work. When he left Swift's premises he drove to a garage where the trailer was uncoupled for cleaning, then after 1 p.m. drove to a nearby place for lunch. He took 15 or 20 minutes to eat and at about 1:45 p.m. left to drive to his next destination. Ten minutes later he was found dead in the cab of his truck having proceeded but a short distance down the highway. There was no *medical examination* of the body and no *autopsy*. The coroner certified the cause of death as "coronary occlusion."

Mrs. Havens, the widow, testified that her husband was in good health and "well and happy" the day previous and had no heart disease or condition, and his son testified that he saw his father on December 27, 1955, and that he was well then. Havens had been examined by a Dr. J. B. Redfield on the Friday before his employment on this job to determine that he was able bodied and the doctor's report, which was in evidence, indicated no heart condition, being without comment thereon except to relate that his blood pressure was normal.

Claimants failed to introduce evidence as to whether overexertion results in coronary occlusion and defendants introduced no evidence at the hearing on this point. Claimants contended in the trial court and now claim here that such proof is not necessary. Defendants state that there must be *medical* evidence establishing causal relationship between overexertion and heart attack before a referee may properly order workmen's compensation benefits.

The referee's order, after reciting substantially the

above facts except that it omitted all reference to: (a) the handcar striking Havens, (b) the testimony of Mrs. Havens and her son and the doctor's pre-job medical examination and (c) comment as to lack of medical testimony at the hearing, then stated:

"Havens had only worked for respondent employer six days. Prior thereto he had driven a gasoline transport, which did not require loading and unloading, so it would not be unrealistic to conclude that the work he was doing on February 2, 1956, constituted, for him, an unusual exertion. The problem thus resolved is whether or not the overexertion prior to noon was the proximate cause of decedent's death two hours later. The Referee is of the opinion that it was not, for the reason that overexertion is not ordinarily an element of coronary occlusion as demonstrated by the fact that more people that succumb to coronary occlusion do so while asleep or at rest than while performing any manner of exercise. The Referee is of the opinion that where exertion is a causative factor in coronary occlusion, death results when the exertion is in progress or within a very few minutes thereafter. The Referee, therefore, concludes that overexertion was not a factor in the death of Clifford G. Havens, which occurred two hours after the exertion had ceased.

"IT IS, THEREFORE, ORDERED: That claimant's claim for compensation and medical benefits be and the same is hereby denied and dismissed."

The referee's order was later affirmed by the Industrial Commission in its Findings of Fact and Award. Petition for review was denied and the necessary procedures were followed and pleadings filed in the district court to review the denial of benefits. After hearing the court ordered the award set aside, and remanded the cause to the commission with directions to enter an award in favor of claimants entitled by statute to receive it. Motion for new trial was dispensed with and defendants are here on writ of error urging for reversal that:

1. The district court erred in vacating and setting aside the Findings of Fact and Award of the Industrial Commission where the Findings of Fact were based upon substantial, credible evidence.

2. The district court erred in substituting its judgment for that of the Industrial Commission as to the inferences and conclusions to be drawn from the evidence in the record.

3. The district court erred in making Findings of Fact which were not substantiated by the evidence in the record.

We believe that all three of the objections to the trial court's judgment depend solely on the answer to one question, viz.: Did the death arise out of the employment or, to put it another way, was there a causal connection between Havens' legitimate job actions and his death?

■ ▪ This question must be answered in the affirmative. Claimants in the trial court attacked as false the premise that the referee's order and the commission's award were based upon substantial, credible evidence. In this they were properly sustained by the trial court. It is clear that the referee's order fails to cover the entire range of pertinent evidence as is set forth in our statement of the case supra. It also appears that the only pertinent evidence before the referee was that Havens died of a coronary occlusion after "unusual exertion" and after being hit by the handcar during the course of his employment. The referee's comment upon, and the expression of his ideas as to the causes and effects of coronary occlusions, as recited in his order, was highly improper, without support in the record and incompetent as a basis upon which to deny an award. If that part of his order were disregarded and the evidence of no prior heart condition and of the blow from the handcar were inserted in lieu thereof, the finding of the referee would reasonably have brought the case within the aegis of the statute. We point out that the "coronary

occlusion" was prima facie proved by the admission into evidence of the certified copy of the death certificate. (See '53 C.R.S. 66-8-24.)

■ The employer urges upon us the valid rule that: Where there are *disputed facts* the findings of the Industrial Commission relating thereto must be accepted by the courts if there is any substantial evidence to support them, citing as authority *Morrison v. Clayton Coal Co.,* 116 Colo. 501, 181 P. (2d) 1011. This moves us, for the benefit of counsel, to point out that that rule has no application to a case where the facts are undisputed. Likewise the cited rule in *Industrial Commission v. Valdez,* 101 Colo. 482, 74 P. (2d) 710, and other cases, that inferences and conclusions to be drawn from the evidence are for the Industrial Commission and not for the courts has no application to cases of undisputed facts, for in Colorado the clear rule is that where the facts in workmen's compensation cases are undisputed, the entire question is one of law for the court, and the courts are not bound by the referee's or the Commission's conclusions of law upon such facts. *Denver Truck Exchange, et al. v. Perryman,* 134 Colo. 586, 307 P. (2d) 805 citing *Industrial Commission, et al. v. Bonfils,* 78 Colo. 306, 241 Pac. 735. And, the district court is at liberty to set aside, in fact must set aside, the award of the commission when it is based upon an improper application of the law. See *Western Casualty and Surety Co., et al. v. Swort,* 134 Colo. 421, 306 P. (2d) 661.

■ Defendants also urge that "The claimant must prove not only the accident and the injury, but also the causal connection between the two; * * *" citing *Vanadium Corporation of America, et al. v. Sargent, et al.,* 134 Colo. 555, 307 P. (2d) 454. Indeed this is true, the point here however is: did the circumstantial evidence before the referee establish the causal connection between the occurrence and the death, or must claimants prove it by expert medical testimony? The unrebutted evidence of the preceding events leads to the conclusion

that the overexertion and possibly the blow from the handcar were the cause of the coronary occlusion. This conclusion is not negatived by any evidence in the record, and where as here a death occurs in the course of employment within a short time following a blow and overexertion as established by the evidence before the referee, a presumption arises that the injury arose out of the employment. We hold that in such circumstances the claimants were not obliged to establish a causal connection between the accident and resulting death by expert medical testimony.

■ This court has often held, and we reiterate, that when a claim is filed under the Workmen's Compensation Act the burden of proof is upon the claimant. *Olson-Hall v. Industrial Commission,* 71 Colo. 228, 205 Pac. 527; *H. C. Lallier Construction and Engineering Company v. Industrial Commission,* 91 Colo. 593, 17 P. (2d) 532; *Industrial Commission, et al. v. London and Lancashire Indemnity Company, et al.,* 135 Colo. 372, 311 P. (2d) 705. And that awards cannot be based upon speculation or conjecture. *Deines Bros. Industrial Commission,* 125 Colo. 258, 242 P. (2d) 600; *Industrial Commission, et al. v. London and Lancashire Indemnity Commission, et al.,* supra. We now add the seemingly necessary corollary for the guidance of the Commission that awards cannot be denied as the result of speculation or conjecture, nor upon evidence not in the record.

*U.S.F. & G. Co. v. Industrial Commission,* 122 Colo. 31, 219 P. (2d) 315, cited by employer as controlling is clearly distinguishable on its facts from this case and is not in point here. There, mere possibilities were held not to establish a probability; there no causal connection had been established by either direct or circumstantial evidence; there the employer introduced medical evidence concerning the myocardial-infarction and proved lack of causal relationship between the overexertion and the coronary occlusion.

■ We point out that the referee could not take

judicial notice of the extraneous non-evidentiary and prejudicial items he included in his order. See *Phelps Dodge Corp. v. Ford,* 68 Ariz. 190, 203 P. (2d) 633, and *Utah Nursery v. Marsh,* 46 Colo. 211, 103 Pac. 302.

In cases such as the one before us, claimants are not required *to prove* by direct and conclusive evidence the cause of death as arising out of the employment; they make a prima facie case by showing the *circumstances* establishing a reasonable connection between the overexertion or trauma occurring in the course of the employment and preceding death, and the subsequent death by heart failure. Thus the causal connection was prima facie established in the case at bar and thus arises the presumption that the death arose out of the employment. The facts and circumstances indicate with reasonable probability that the death resulted from or was precipitated by the "accident" of the overexertion or the blow from the handcar, or from both. The failure or inability of the employer to rebut the claimants' prima facie case is thus fatal to its position in this court.

In *Industrial Commission, et al. v. Corwin Hospital, et al.,* 126 Colo. 358, 250 P. (2d) 135, this court in effect held that *no medical proof of causation was necessary* to prove that the claimant contracted polio while at work, and we now add that if the rule were otherwise an unattended injury or death in many cases could never be compensated. All that is necessary to warrant the finding of a causal connection between the accident and the disability, is to show facts and circumstances which would indicate with reasonable probability that the injury or death resulted from or was precipitated by the "accident." It seems needless to again point out that the Act in question is highly remedial in its purpose and must be given a liberal construction to accomplish its beneficial purposes.

In *Canon Reliance Coal Co. v. Industrial Commission,* 72 Colo. 477, 211 Pac. 868, this court affirmed an award of the Industrial Commission wherein the disease of

cancer allegedly caused by a blow on the face was held to be a compensable accident. Awards for other unusual types of injuries or deaths have been sustained in Colorado. See *Columbine Laundry Co. v. Industrial Commission,* 73 Colo. 397, 215 Pac. 870, (carbon monoxide gas resulting in pneumonia and death), and *Industrial Commission v. Swanson,* 93 Colo. 354, 26 P. (2d) 107, (wind draft in tunnel resulting in pneumonia and death).

In the Corwin case, supra, the court proceeded to set forth the rule previously adopted in Colorado that: "An accident 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

Here the evidence is undisputed. Trauma and overexertion could unquestionably have caused Havens' death. No other cause is even hinted.

Even in cases of medical dispute as to the cause of an injury if there is proper evidence favoring the claimant, such is sufficient to grant the protection of the Act even though the weight of medical testimony may be to the contrary, and the undisputed evidence of an uncontroverted probability as in this case must sustain recovery.

In the overexertion case of *Industrial Commission, et al. v. Wetz,* 100 Colo. 161, 66 P. (2d) 812, it was not explained by direct medical testimony how the death related to the employment activities, there being no attending physician or autopsy, and this court said at page 168:

"The claimants were not required to demonstrate the cause of the dilatation, but merely to show its cause by competent evidence. Circumstantial evidence is competent. Even in a criminal case, circumstantial evidence is sufficient to convict, if the jury is convinced by it of defendant's guilt and find the circumstances consistent with guilt and inconsistent with any reasonable hypoth-

esis of innocence. Having introduced competent evidence to prove exertion shortly before death and having shown as a circumstance a dilatation—adequately explained by exertion—the commission, in the discharge of its function under the law, should have considered the evidence and should have made a finding as to the fact that the evidence was competent to prove; namely, as to whether there was exertion. Instead, the commission found 'neither is there any evidence that decedent at any time exerted himself strenously or at all.' This is a conclusion of law. As pointed out in *United States F. & G. Co. v. Industrial Commission*, 96 Colo. 571, 45 P. (2d) 895, 'What constitutes evidence is a question of law.' An erroneous finding that there is no evidence of exertion, when the record discloses such evidence, is not equivalent to a finding that there was no exertion. The existence or nonexistence of exertion are the relevant facts. The duty of finding one or the other of such facts, when an issue under the evidence, is mandatory on the commission. * * *

"The direction of the trial court in this case was correct. Having found as a matter of law that there was uncontroverted evidence showing exertion and that exertion, under the circumstances, was an adequate cause of heart dilatation which produced death, and the findings of the commission on uncontroverted evidence clearly showing that such cause arose out of and in the course of the employment, under section 4481, C.L. 1921, it was proper for the district court to order the commission to enter the proper award. Since under the trial court's determination of questions of law it is inescapable that findings of accidental death must be made from uncontroverted evidence the court was acting within its power and within the letter and spirit of the above section in ordering an award. The making of the findings of fact that necessarily follow from conclusions of law is but incidental to the making of the award under the situation here disclosed."

Other Colorado cases relating to the compensability vel non of heart deaths which we cite with approval are: *Carroll, et al. v. Industrial Commission, et al.,* 69 Colo. 473, 195 Pac. 1097, 19 A.L.R. 107 (death in dust laden air while suffering from organic heart disease) and *Ellerman, et al. v. Industrial Commission, et al.,* 73 Colo. 20, 213 Pac. 120 (immediate death while wheeling a wheelbarrow). In the Ellerman case supra this court said "If death was due to 'overexertion' 'arising out of' the employment and would not have occurred save for such employment, then the 'overexertion' was 'an accident.' "

█ Thus we see in the instant case competent un-disputed circumstantial evidence which leads to a causal connection and probability between Havens' morning's activities and his death in the early afternoon, and this is coupled with our previous holding that "overexertion" alone can be an "accident."

The time interval between Havens' overexertion and handcar accident cannot intervene to defeat the claim-ants here. There is no evidence to dispute the causal connection established between accident and time of death. Though not agreeing with the extensive lapse of time in *Lachance's Case* infra we do note that from a few hours to a few days or weeks appears not to result in a prejudicial time interval in cases from other jurisdic-tions. For example in *Mansfield Engineering Co. v. Winkle,* 77 Ind. App. 237, 133 N.E. 390, trauma was in-volved with the employee continuing on for awhile and later going home. Four and a half hours elapsed there between the time of the blow on the head and the death from a ruptured right auricle of the heart. There was disputed medical testimony as to whether a blow to the head could have caused such a ruptured heart. Com-pensation was allowed. In *Lachance's Case,* 121 Me. 506, 118 Atl. 370, death occurred on April 3, 1921, from an injury incurred October 22, 1920. There the employee was thrown from a horse but died of asystole, a heart

impairment. Again death benefits were allowed, the court commenting that though Lachance had a chronic heart disease, the disease was "hastened to culmination (to death) by an industrial injury." See also *Skroki v. Crucible Steel Co.*, 292 Pa. 550, 141 Atl. 480 (late afternoon overexertion with death at 7 a.m. next day); *Fogarty, et al. v. Department of Industrial Relations of California*, 206 Cal. 102, 273 Pac. 791, (employment from May 8 to June 3, 1924, aggravated a heart condition" * * * thus precipitated the train of symptoms culminating in his death * * *" on June 24, 1926); *Cherdron Const. Co., et al. v. Simpkins*, 61 Utah 493, 214 Pac. 593, (injury July 22, total disability August 10).

Heart compensation cases may differ factually but the authorities seem to agree that once the evidence falls into the pattern of the instant case, neither prior heart disease nor a reasonable time interval make any difference, and benefits can be allowed with no dependence on favorable medical testimony.

The judgment is affirmed.

Mr. Justice Frantz specially concurs.

Mr. Justice Knauss, Mr. Justice Hall and Mr. Justice Day dissent.

Mr. Justice Frantz specially concurring:

What should be the abiding rule for the establishment of a prima facie claim in a workmen's compensation case where the evidence as to the causal connection between the employment and the death of the employee is wholly circumstantial? The majority opinion contains the answer, but I think we should attempt a more explicit statement of the applicable principles than appears in such opinion. This concurring opinion is an effort at achieving such statement.

Circumstantial evidence is sufficient to make out a prima facie case, and it may be based upon the reasonable inferences to be drawn from the reasonable prob-

abilities flowing from the evidence; "neither absolute certainty nor demonstration is required." *Pacific Employers Ins. Co. v. Industrial Accident Commission,* 19 Cal. (2d) 622, 122 P. (2d) 570; 141 A.L.R. 798; *Herron Lumber Co. v. Neal,* 205 Ark. 1093, 172 S.W. (2d) 252. "All that is necessary, to warrant the finding of causal connection between the accident and the disability, is to show facts and circumstances which would indicate with reasonable probability" such connection. *Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 236 P. (2d) 293. *Industrial Commission v. Wetz,* 100 Colo. 161, 66 P. (2d) 812.

The case under consideration has present two elements ordinarily necessary in a death claim based upon circumstantial evidence: (1) the death occurring with the nearness it did to the exertion which decedent had just undergone, *Teal v. Potash Company of America,* 60 N.M. 409, 292 P. (2d) 99; *Herron Lumber Co. v. Neal,* supra; *Valente v. Bourne Mills,* 77 R.I. 274, 75 Atl. (2d) 191; (2) the sequence of events reasonably suggestive of a causal relation between the employment and the injury. *Teal v. Potash Company of America,* supra; *Adelaide Stevedoring Co. v. Forst,* 64 C.L.R. 538 (Australia); *Industrial Comm. v. Corwin Hospital,* 126 Colo. 358, 250 P. (2d) 135.

"We are not unmindful that the exact and precise cause of death is not established with the degree of proof desirable. *But death occurring with the nearness it did to the extreme strain and exhaustion decedent had just undergone,* plus the conditions under which he labored, all contribute to make it a matter of permissible inference, in our opinion, whether the strain and exhaustion were not a proximately contributing cause of the workman's death and, hence, compensible [sic] under our Workmen's Compensation Act." (Emphasis supplied.) *Teal v. Potash Company of America,* supra.

"We concede that in the great majority of cases

[medical] testimony ordinarily is necessary because of the seeming absence of connection between a particular accident and a claimed resulting injury. But in other cases involving special and peculiar circumstances, *medical evidence, although highly desirable, is not always essential for an injured employee to make a prima facie case, especially if the testimony is adequate, undisputed and unimpeached."* (Emphasis supplied.) *Valente v. Bourne Mills,* supra.

"I am greatly impressed by *the sequence of events.* The deceased, who had arrived at an age when arteriosclerosis and atheroma afflict mankind, was a stevedore's labourer. On the day of his death he climbed up the jib of the crane and lay prone on the crane with his arms outstretched, trying to replace a wire which had come off the gin. He failed to do so, returned to the deck and for some time, with his arms in a position raised over his head, helped in holding up a wire rope. Immediately after performing this task he collapsed. What weighs so much with me is the fact that he was brought to a standstill, as an ordinary lay observer would think, by the exertion he had undergone: Cf. Partridge Jones and John Paton Ltd. v. James (1). I do not see why a court should not begin its investigation, i.e. *before hearing any medical testimony, from the standpoint of the presumptive inference which this sequence of events would naturally inspire in the mind of any common-sense person uninstructed in pathology.* When he finds that a workman of the not-so-young standing attempts in a posture calculated by reason of the pressure on the stomach to disturb or arrest the rhythm of the heart a very strenuous task not forming part of his ordinary work and then collapses almost immediately and dies from a heart condition, *why should not a court say that here is strong ground for a preliminary presumption of fact in favour of the view that the work materially contributed to the cause of death?* From this standpoint the investigation of physiological and pathological opin-

ion shows no more than the current medical views find insufficient reason for connecting coronary thrombosis with effort. Be it so. That to my mind is not enough to overturn or rebut *the presumption which flows from the observed sequence of events.* If medical knowledge develops strong positive reasons for saying that the lay common-sense presumption is wrong, the courts, no doubt, would gladly give effect to this affirmative information. But, while science presents us with no more than a blank negation, we can only await its positive results and in the meantime act on our own intuitive inferences." (Emphasis supplied.) *Adelaide Stevedoring Co. v. Forst,* supra.

The following language from *Teal v. Potash Company of America,* supra, could be applied with equal propriety to the present case: "But where, as here, *there is a sequence of events in rapid order,* such a brief hiatus of time between the exertion, followed by the quenching of thirst with refrigerated water and, then, sudden death, the natural experience of mankind suggests there likely is a causal connection between the strain and exhaustion, on the one hand, and the consequent death on the other." (Emphasis supplied.)

A prima facie case may be established without the aid of expert medical evidence. *Industrial Comm. v. Corwin Hospital,* supra; *Valente v. Bourne Mills,* supra; *Charleston Shipyards, Inc. v. Lawson,* 227 F. (2d) 110; *Hampton Roads Stevedoring Corp. v. O'Hearne,* 184 F. (2d) 76; *Dell v. State Workmen's Insurance Fund,* 118 Pa. Super. 541, 179 Atl. 889; *Jarka Corp. v. Norton,* D.C., 56 F. (2d) 287. "In fact, when there is medical opinion that the death is not related to the injury, the circumstances may outweigh the physician's express opinion." *Hampton Roads Stevedoring Corp. v. O'Hearne,* supra; *Charleston Shipyards, Inc. v. Lawson,* supra; *Crescent Wharf & Warehouse Co. v. Cyr,* 200 F. (2d) 633; *Utah Delaware Min. Co. v. Industrial Comm.,* 76 Utah 187, 289

Pac. 94; *Liberty Mutual Insurance Co. v. Marshall,* D.C., 57 Fed. Supp. 177.

Within the limitations of the law as herein enunciated, I am in accord with the majority opinion.

MR. JUSTICE HALL dissenting:

I respectfully dissent from the majority opinion.

Claimant's right to compensation cannot be sustained unless the evidence establishes that death of the employee "is proximately caused by accident arising out of and in the course of his employment * * *" C.R.S. '53, 8-13-2. There is ample proof of the fact that the immediate cause of death was "coronary occlusion." I find no evidence to justify a finding or conclusion that the "coronary occlusion" was "proximately caused by an accident arising out of and in the course of his employment."

The following language from the majority opinion:

"Claimants *failed to introduce evidence as to whether overexertion results in coronary occlusion* and defendants introduced no evidence at the hearing on this point" (emphasis supplied), makes it clear that there is no proof on the question as to the cause of the "coronary occlusion," which admittedly was the immediate cause of death. In spite of this *lack* of evidence, the majority opinion holds that *as a matter of law* the overexertion caused the coronary occlusion, thus indulging in presumptions never before deemed applicable in a workmen's compensation case.

Quoting further from the majority opinion: "It also appears that *the only pertinent evidence* before the referee was that Havens died after "unusual exertion" and after being hit by the handcar during the course of his employment." (Emphasis supplied.)

This evidence, admittedly "the only pertinent evidence," may well serve to fix the *time* of death but does not even intimate "the proximate cause" of death. Un-

derstandably, the referee and commission, faced with this lack of evidence as to *proximate cause,* refused to make a finding that death was *proximately caused by over-exertion.*

Another quote from the majority opinion: "Here the evidence is undisputed. Trauma and overexertion *could* unquestionably have caused Havens' death."

The problem before us is not *what could* have caused the death but rather *what did* cause the death. It is the function of the referee and commission to find the facts from the evidence, not from lack thereof; and their findings should not be disturbed unless clearly contrary to the evidence. In my humble opinion the findings of the referee, approved by the commission, are clearly right. The contrary findings by the trial court and the majority of this court rest on lack of evidence, conjecture, surmise and at best are a guess as to what *could have caused the death.* The judgment should be reversed and the claim for compensation denied.

I am authorized to state that MR. JUSTICE KNAUSS and MR. JUSTICE DAY join in this dissent.